**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

| | |
|---|---|
| In re: | **Hearing Date: July 6, 2023** |
| | **Hearing Time: 10:00am** |
| MADHU GROVER, | **(prevailing Eastern Time)** |
| | |
| Debtor. | **Objection Deadline: June 29, 2023** |
| | **Reply Deadline: July 3, 2023 at 4:00pm** |
| | **(prevailing Eastern Time)** |
| | |
| | Chapter 7 |
| | Case Number 22-11730-mg |
| | |
| | Honorable Martin Glenn |
| | Chief U.S. Bankruptcy Judge |

-------------------------------------------------------X

**CREDITOR'S MOTION TO OBJECT TO SCHEDULED EXEMPTION AND TO SEEK
ENTRY OF AN ORDER DEEMING FULL VALUE OF DEBTOR'S
JPMORGAN CHASE BANK CHECKING ACCOUNT x6350 TO BE PROPERTY OF
DEBTOR'S ESTATE AND GRANTING RELATED RELIEF**

---

TO THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE:

   Creditor James Busche ("Busche" or "Creditor"), by his attorneys, Bradshaw Law Group P.C. (the "Creditor's Counsel"), submits this motion (the "Motion") for entry of an order substantially in the form annexed hereto as **Exhibit A** (the "Proposed Order"): (i) denying Debtor's scheduled exemption of a JPMorgan Chase Bank ("Chase") Checking Account x6350 (the "Chase Account"); (ii) deeming the full value of the Chase Account as of the Petition Date to be the property of the Debtor's estate; (iii) fixing the value of the Debtor's remaining scheduled exemptions, (iv) enjoining Debtor from claiming additional exemptions beyond the scheduled exemptions listed as of February 3, 2023 without leave of the Court; and (v) granting such other and further relief as the Court deems just, equitable, and proper, and in support of such Motion respectfully represents:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this Motion under 28 U.S.C 157, 28 U.S.C. 1334, and the *Standing Order of Referral of Cases to Bankruptcy Judges* of the United States District Court for the Southern District of New York, Judge Robert T. Ward, dated July 10, 1984. The statutory predicates for the relief sought by this Motion are 11 U.S.C. 105, 11 U.S.C. 522, and Rule 4003 of the Federal Rules of Bankruptcy Procedure ("Rule 4003"). Venue of the case and this Motion in this District is proper under 28 U.S.C. 1408 and 28 U.S.C. 1409.

**RELIEF REQUESTED**

2.      Rule 4003 provides that "… a party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under §341(a) is concluded…."

3.      This Motion is timely as the Meeting of Creditors held under 11 U.S.C. 341 has been continued and has not yet concluded.

4.      Under 11 U.S.C. 105, the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of Title 11 of the United States Code (the "Bankruptcy Code") and may take any action or make any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

5.      As recounted herein, the Debtor has a history of evasion, prevarication, concealment, serial transfer of assets, and abuse of process.

6.      Creditor submits this Motion to, *inter alia*, object to the scheduled exemption of the Chase Account and seeks entry of the Proposed Order: (i) denying Debtor's scheduled exemption of the Chase Account; (ii) deeming the full value of the Chase Account as of the Petition Date to be the property of the Debtor's estate; (iii) fixing the value of the Debtor's

remaining scheduled exemptions, (iv) enjoining Debtor from claiming additional exemptions beyond the scheduled exemptions listed as of February 3, 2023 without leave of the Court; and (v) granting such other and further relief as the Court deems just, equitable, and proper under the circumstances.

## **RELEVANT PROCEDURAL BACKGROUND**

7.      On December 31, 2022 (the "Petition Date"), Madhu Grover (the "Debtor" or "Grover"), by her former attorneys, The Law Offices of Adrienne Woods, P.C. (the "Debtor's Former Attorney"), filed a voluntary petition in this Court for the relief of discharge under Chapter 7 of the Bankruptcy Code (the "Petition") [DOC 1].

8.      On January 3, 2023, the Court assigned Yann Geron as the Chapter 7 trustee (the "Trustee").

9.      On January 17, 2023, Debtor's Former Attorney filed an Amended Voluntary Petition (the "Amended Petition") [DOC 8] and Amended Schedules A-J, including Debtor's Statement of Financial Affairs (the "SOFA") [DOC 9]. Under Schedule C, Debtor elected to claim Federal exemptions pursuant to 11 U.S.C. 522(b)(2).

10.      On Schedule E/F, Debtor listed Creditor's debt, accrued subsequent to a judgment that was granted to Creditor under New York County Index Number 308788/2014 and filed on August 15, 2019 in the amount of U.S.$2,664,280.75 (the "Judgment"), from which Judgment Debtor seeks discharge, annexed hereto as **Exhibit B**.

11.      On February 3, 2023, Debtor's Former Attorney filed an amended Schedule E/F [DOC 11] adding the New York State Department of Labor (the "DOL Co-Creditor") with respect to Claim 1-1 filed February 17, 2023 pursuant to New York State Department of Labor Order to Comply No. 22-00404 in connection with violation of New York State Labor Law involving Debtor's former housekeeper, Carina Canicon, annexed hereto as **Exhibit C**.

12.     The SOFA lists Debtor's daughter, Non-Debtor Ashna Shah Grover ("Ashna" or "Non-Debtor"), as: (i) an insider to whom payment on a debt was made within one year before the Petition Date; (ii) co-owner with 50% interest in Debtor's entity ASMG Consulting LLC ("ASMG"); (iii) joint account holder with Debtor in the Chase Account.

13.     The SOFA reports at Part 4 the litigation entitled *Prasanna Pandarinathan v. Madhu Grover*, New York County Index Number 160728/2022 (the "Pandarinathan Litigation"). The Pandarinathan Litigation Complaint, entered December 15, 2022 as NYSCEF DOC 1 and annexed hereto as **Exhibit D**, alleges fraud, breach of fiduciary duty, negligent misrepresentation, breach of implied contract, and breach of covenant of good faith and fair dealing. Upon information and belief, proceedings in the Pandarinathan Litigation have been suspended pursuant to the 11 U.S.C. 362 Automatic Stay.

14.     A 341 Meeting of Creditors (the "341 Meeting") was held by the Trustee via teleconference on February 3, 2023. A transcript of that 341 Meeting is annexed hereto as **Exhibit E** (the "Transcript"). The Trustee held the 341 Meeting open and adjourned for holding purposes to the Trustee's next 341 date on March 24, 2023 and then further continued to May 19, 2023. Upon information and belief based upon communication with the Trustee, the 341 Meeting has been further continued beyond May 19, 2023.

15.     On March 17, 2023, a So-Ordered Joint Stipulation and Agreed Order by and among Debtor's Former Attorney, Creditor's Counsel, and Pandarinathan's counsel was entered extending the deadline for filing a nondischarge and nondischargeability complaint through and including June 9, 2023 [DOC 22].

16.    On April 24, 2023, pursuant to motion, an Order was entered extending the Trustee's time to object to Debtor's discharge or to move to dismiss Debtor's bankruptcy case through and including October 4, 2023 [DOC 41].

17.    Trustee's *Ex Parte* 2004 Application filed March 22, 2023 [DOC 26] was granted by Order entered March 23, 2023 [DOC 28].

18.    Creditor's *Ex Parte* 2004 Application was filed on April 3, 2023 [DOC 29] and granted by Order dated April 12, 2023 [DOC 37].

19.    Pandarinathan's *Ex Parte* 2004 Application was filed on April 11, 2023 [DOC 34] and granted by Order entered April 25, 2023 [DOC 42].

20.    Discovery pursuant to the 2004 Orders is underway and seeks in the best interests of the estate to investigate, without limitation, (i) the nature and extent of Debtor's interest in financial accounts; ii) equity, ownership, governance, or other interest in any entities, including but not limited to third parties, alter egos, or shell organizations; (iii) the identification and value of Debtor's personal and real property; (iv) Debtor's transfer, redirection, or assignment of assets to Manish Shah, Ashna, various alter egos, shell entities, or other third parties who might be liable to the Trustee on account of their possession or diversion of property of the bankruptcy estate; (v) the nature and extent of Debtor's relationship, without limitation, with non-debtors acting in concert, agents, representatives, associates, nominees, joint account holders, co-tenants, or any other third parties who might be liable to the Trustee on account of their possession or diversion of property of the bankruptcy estate; and (vi) any and all information related to the past or present financial condition of Debtor.

21.    Before the Petition Date, on or about December 16, 2022, Creditor's Counsel served an Information Subpoena and Restraining Notice on Chase with respect to the Chase

Account in connection with collection efforts pursuant to enforcement of the Judgment. Chase responded by correspondence dated December 29, 2022, reporting the present balance of the Chase Account as U.S.$57,601.86, and a restraint was placed upon the Chase Account. In correspondence dated January 5, 2023, in connection with filing of the Petition, Chase reported the amount of the levied funds in the Chase Account as U.S.$61,301.86. *See* **Exhibit F**.

22.    Debtor's Schedule A/B [DOC 9], entered January 17, 2023, reports the value of the Chase Account that Debtor owns as U.S.$53,337.52.

23.    By letter dated January 6, 2023, Debtor's Former Attorney demanded release of the restraint on the Chase Account in accordance with the 11 U.S.C. 362 Automatic Stay. *See* **Exhibit F**.

24.    By facsimile transmission dated January 17, 2023, and attachments thereto, Creditor's Counsel informed Chase that the Chase Account funds could be released, but only to the Trustee, and that it was unlawful to transfer the funds to Debtor or to Ashna. *See* **Exhibit F**.

25.    Ashna filed a Motion to release the Chase Account funds on May 1, 2023 [DOC 43] (the "Shah Grover Motion"), and a remote hearing date was set for May 16, 2023 (the "May 16th Hearing").

26.    Objections to the Shah Grover Motion were filed by Creditor [DOC 45] ("Creditor's Objection") and Trustee [DOC 44] ("Trustee's Objection") on May 9, 2023.

27.    Ashna filed a reply [DOC 48] on May 11, 2023 (the "Shah Grover Reply").

28.    Debtor's Former Attorney filed a Motion for Permission to Withdraw as Counsel on May 10, 2023 [DOC 47] (the "Motion to Withdraw"). Debtor has been proceeding *pro se*.

29.    The Trustee's Objection included a request for adjournment of the May 16th Hearing upon the following statement:

> 6. …[C]ounsel to Mr. Busche advised the Trustee and this Court that Mr. Busche intends to object to the Debtor's scheduled exemptions and to seek a determination as to whether the full value of the Funds (as of the petition date) is property of the Debtor's estate. To the extent that the Court finds that the Motion is ripe for determination, the Trustee respectfully requests that the hearing on the Motion be adjourned and combined with the hearing on Mr. Busche's impending motion in order to allow this Court and the Trustee to efficiently address the issues raised herein.

30.     The Court informed the parties on May 19, 2023 that an adjourned remote hearing date has been scheduled for July 6, 2023 at 10:00am (the "July 6th Hearing") to entertain the Shah Grover Motion, the Motion to Withdraw, and this Motion, with the direction that Creditor's Counsel file this Motion no later than May 22, 2023.

## RELEVANT FACTUAL BACKGROUND

31.     The history that follows is based primarily upon numerous pre-Petition proceedings (the "Pre-Petition Proceedings") and is more completely related in Creditor's Objection [DOC 45] to the Shah Grover Motion. Selected supporting documentary and testimonial evidence from those Pre-Petition Proceedings is annexed hereto as **Exhibit G** detailing the scope of Debtor's deceptive, fraudulent, and evasive behavior including without limitation a history of activity contained in the Verified Complaint, Attorney's Affirmation of Bradley H. Andrews, the Report of the Special Referee Jeffrey A. Helewitz, and the Judgment from which Debtor seeks discharge.

32.     In the course of the Pre-Petition Proceedings, Busche obtained the Judgment against the Debtor in the amount of U.S.$2,664,280.75 founded upon Debtor's acts of deceit and conversion. That amount, plus statutory interest thereon, remains unsatisfied despite rigorous collection efforts. Upon information and belief and as recorded in the Pre-Petition Proceedings, Grover misappropriated property and funds in at least the sum of U.S.$5,434,541.67. *See* **Exhibit G**.

33.    As more fully recited in Creditor's 2004 Application [DOC 29], Debtor has a history of deception, including perjury, fraud, and misappropriation of funds. *See* **Exhibit G**.

34.    Busche and Debtor were married on April 30, 2009 in Hong Kong City Hall. However, as Busche subsequently discovered, Debtor was married to Manish Shah ("Shah") on June 17, 1993 in the Office of the City Clerk, Queens County. The marriage certificate is annexed hereto as **Exhibit H**. Debtor and Shah have a daughter, Ashna, and have never divorced. Upon information and belief, based upon the record in this case, they currently reside together. Despite that fact, Debtor and Shah have perjured themselves on more than one occasion by testifying that Debtor was not married to Shah. *See* **Exhibit G**.

35.    Prior to Busche's discovery of the bigamy, Debtor persuaded Busche to allow her to manage and invest Busche's money, purportedly for their mutual benefit. Busche believed at the time that Debtor was a successful financial professional and agreed to the arrangement. *See* **Exhibit G**.

36.    Debtor transferred an amount between U.S.$3,000,000 and U.S.$5,000,000 from a joint HSBC account in Hong Kong to an HSBC Montgomery Partners Ltd. account in Hong Kong and to a New York based account under Debtor's exclusive control. *See* **Exhibit G**

37.    Upon information and belief, Debtor initially invested most of the money with a hedge fund, Wasson Capital, which is no longer operating. *See* **Exhibit G**

38.    Thereafter, Debtor transferred all or most of the funds into two or more Morgan Stanley accounts under Debtor's name and under the name of Debtor's mother Vijaya Grover ("Vijaya"), but all under Debtor's sole control. *See* **Exhibit G**. Upon information and belief, Debtor opened the Morgan Stanley accounts using her Indian passport, which shows a different date of birth than in Debtor's U.S. passport. *See* **Exhibit I**.

39.     Upon information and belief, some of the funds were also transferred to one or more accounts at Interactive Brokers Group in the name of Montgomery Partners Ltd. but with Debtor having full access to trade on the account. *See* **Exhibit G**

40.     Upon information and belief, any remaining funds were transferred to one or more accounts in India under Debtor's or Vijaya's name. Funds were also transferred in one or more transactions involving Shah's company, Diamond Deal Corporation, and the diamond industry sightholder company Rosy Blue. *See* **Exhibit G**.

41.     As of March 2014 statements, an aggregate of approximately U.S.$5,434,541 of Busche's funds had been transferred or deposited into accounts under Debtor's sole control with institutions including without limitation Wasson Capital, Morgan Stanley, Interactive Brokers Group, and Grover Partners Limited ("GPL"), upon information and belief a Hong Kong based "dummy" corporation that Debtor formed to hold funds misappropriated from Busche and perhaps other targets of Debtor's fraudulent activity. Busche had no access to or control over his funds that Debtor had thus transferred. *See* **Exhibit G**.

42.     As of on or about March 1, 2016, Ashna was an authorized signatory on GPL's Morgan Stanley account. Debtor's broker at Morgan Stanley is Alessandro Spinetta. *See* **Exhibit J**.

43.     The denials in the Shah Grover Reply notwithstanding, during the period when Busche and Debtor lived together, they were supported exclusively by Busche's salary, housing allowance, or earnings on the funds that Debtor was purportedly managing. Busche also paid for Ashna's U.K. boarding school from 2009 to 2012 as well as private school in Hong Kong from 2006 to 2009. These facts are a matter of record as documented in testimony throughout the Pre-Petition Proceedings. *See* **Exhibit G**.

44.    The relationship between Debtor and Busche continued to deteriorate, but in October 2013, when Busche proposed divorce, Debtor replied that their marriage wasn't valid anyway, because she remained married to Shah, never having obtained a divorce from him. *See* **Exhibit G**.

45.    In or about September 2013, Busche asked Debtor to provide him with access to his money and return the funds. Debtor told Busche that the funds had grown to approximately U.S.$6,000,000 and that she would return to him his initial U.S.$3,000,000 by November 2013 because she had to wait a couple of months to "complete a few trades." Debtor then said that she would transfer the funds in December 2013 and again postponed the transfer to February 2014. *See* **Exhibit G**.

46.    In or about January 2014, Debtor promised to transfer some "living money" to Busche's Chase checking account. Neither the "living money" nor the February 2014 U.S.$3,000,000 transfer ever took place. *See* **Exhibit G**.

47.    Busche left Hong Kong on or about December 24, 2013, and the next day, Shah moved in with Debtor in the residence that Busche and Debtor had shared. *See* **Exhibit G**.

48.    Upon information and belief, at the time when Busche left Hong Kong, Debtor owned jewelry valued between U.S.$1,000,000 and U.S.$2,000,000 as well as apartments in Mumbai and Jabalpur, India. *See* **Exhibit G**.

49.    On or about July 10, 2014, Busche, by his attorney at the time, Bradley Andrews ("Andrews"), filed a complaint (the "Verified Complaint") under New York County Index Number 308788/2014 naming Debtor, Shah, and Vijaya as defendants. The first three causes of action were matrimonial. The fourth, fifth, and sixth causes of action were constructive trust,

unjust enrichment, and fraudulent misrepresentation in connection with the transfers of Busche's funds to accounts beyond his control. *See* **Exhibit G**.

50.    Vijaya could not be served and was dropped from the case. Shah failed to appear or answer. Debtor engaged a series of counsel.

51.    On November 10, 2015, a hearing was held before the Honorable Ellen F. Gesmer on the issue of jurisdiction wherein Debtor and Shah perjured themselves by claiming that they had never been married to each other. *See* **Exhibit G**.

52.    A marriage certificate filed in the Office of the City Clerk of the City of New York, Queens County, was subsequently discovered verifying that Debtor and Shah were married to each other on June 17, 1993. In light of the continuing, valid marriage between Debtor and Shah, Justice Gesmer ruled that Debtor remained a New York domiciliary and as such, New York had jurisdiction over the case, which was then assigned to the Honorable Michael L. Katz. *See* **Exhibit G** and **Exhibit H**.

53.    In the summer of 2016, Debtor's attorney of record withdrew based on his alleged inability to make contact with his client. *See* **Exhibit G**.

54.    Pursuant to Shah's failure answer the Verified Complaint and Debtor's failure to appear, Andrews filed a motion for default judgment against both Debtor and Shah. Debtor appeared *pro se* on the return date and was ordered to submit to an EBT, which was conducted in January 2017. *See* **Exhibit G**.

55.    On April 4, 2017, Justice Katz issued an order of reference to hear and report, sending the case to Referee Jeffrey A. Helewitz, before whom hearings were held on January 8-9, 2018 on the issues of appropriate division of assets and assessment of damages against Shah based on his failure to serve an answer or appear. *See* **Exhibit G**.

56.     In the Report of the Special Referee filed January 29, 2018, Referee Helewitz found Busche's hearing testimony to be credible and Debtor's to be incredible. Believing that more discovery was warranted, the Referee nonetheless reported and recommended based on the testimony and the limited evidence presented at the hearing that: 1) Judgment should be entered in favor of Busche against Debtor in the amount of U.S.$1,795,502.63; 2) Prejudgment statutory interest should be awarded from April 1, 2014 until notice of entry of judgment as the case was based on claims of fraud and unjust enrichment; and 3) There was insufficient evidence to assess damages against Shah. *See* **Exhibit G**.

57.     Judge Katz issued a Decision and Order dated November 14, 2018 and entered November 21, 2018 (the "Katz Order") confirming the Report of the Special Referee and directing the Clerk to enter a money judgment in favor of Busche in the amount of U.S.$1,795,502.63 together with prejudgment statutory interest from April 1, 2014. *See* **Exhibit G**.

58.     The Judgment was filed against Debtor on August 15, 2019 in the Office of the New York County Clerk in the amount of U.S.$1,795,602.53 together with statutory interest thereon from April 1, 2014 in the amount of U.S.$868,678.12, for a total sum of U.S.$2,664,280.75, providing that Busche should have execution thereon. *See* **Exhibit G**.

59.     Debtor filed a Notice of Appeal from the Katz Order on or about December 4, 2018, but the Appellate Division First Department unanimously affirmed the Katz Order by Decision and Order entered February 20, 2020. *See* **Exhibit G**.

60.     To date, Debtor has failed to satisfy the Judgment. Busche has made collection efforts only to find that funds had been transferred each time an account was identified.

61.     In August 2018 Busche commenced diversity Case No. 18-CV 7425 against GPL in Southern District of New York based on fraudulent conveyance and unjust enrichment presided

over by the Honorable Jesse M. Furman. On September 18, 2018, Justice Furman issued an Order

Granting Preliminary Injunction (the "Federal Injunction") restraining any financial account at

Morgan Stanley or Interactive Brokers held in the name of GPL for the duration of the litigation

and prohibiting GPL "and its officers, agents, servants, employees, attorneys, and any other

persons who are in active concert or participation with the foregoing" from transacting "in any

way in any of the accounts held in the name of" GPL at Morgan Stanley or Interactive Brokers.

*See* **Exhibit G**.

62.     In order to avoid protracted litigation over diversity jurisdiction, the parties agreed

to transfer the action to the Supreme Court of the State of New York, New York County

(the "State Court") under Index No. 154468/2019 (the "GPL Action"). The restraint on the funds

continued in accordance with the terms of the Federal Injunction as stipulated to by the parties and

ordered by the State Court on June 25, 2019. *See* **Exhibit G**.

63.     Justice Katz granted Busche's summary judgment motion in the GPL Action and

entered a Decision and Order on March 10, 2021 ordering: 1) judgment in favor of Busche and

against GPL in the amount of U.S.$1,326,003 together with interest from July 6, 2016

(the "GPL Judgment"); and 2) liquidation and disbursement to Busche's counsel of any funds

remaining in Busche's previously restrained Morgan Stanley and Interactive Brokers accounts.

*See* **Exhibit G**.

64.     However, when Busche attempted to enforce the GPL Judgment, he discovered

that, in contravention of the injunctive orders, Morgan Stanley had permitted Debtor or some other

party acting on behalf of Debtor or GPL to make trades and withdrawals and take other action on

the accounts with the result that the approximately U.S.$1,500,000 amount that had been in the

Morgan Stanley accounts had been reduced to approximately U.S.$46,000. *See* **Exhibit G**.

65.     The Interactive Brokers funds have to date been uncollectible.

66.     On July 19, 2021, Busche commenced an action for negligence in the Supreme Court of the State of New York, New York County, under Index Number 156725/2021, against Morgan Stanley which has subsequently been resolved by a confidential settlement.

## THE DEBTOR SHOULD NOT BE ALLOWED EXEMPTION OF THE CHASE ACCOUNT UNDER 11 U.S.C. 522.

67.     As a threshold matter, but for Debtor's bankruptcy filing, all of the funds in the Chase Account would be subject to collection. Thus, Creditor, Pandarinathan, and DOL Co-Creditor would be prejudiced by exemption of the Chase Account funds at this point in the proceedings.

68.     New York Banking Law 675 provides in pertinent part:

> a) When a deposit of cash, securities, or other property has been made or shall hereafter be made in or with any banking organization or foreign banking corporation transacting business in this state, or shares shall have been already issued or shall be hereafter issued, in any savings and loan association or credit union transacting business in this state, in the name of such depositor or shareholder and another person and in form to be paid or delivered to either, or the survivor of them, such deposit or shares and any additions thereto made, by either of such persons, after the making thereof, shall become the property of such persons as joint tenants and the same, together with all additions and accruals thereon, shall be held for the exclusive use of the persons so named, and may be paid or delivered to either during the lifetime of both or to the survivor after the death of one of them, and such payment or delivery and the receipt or acquittance of the one to whom such payment or delivery is made, shall be a valid and sufficient release and discharge to the banking organization or foreign banking corporation for all payments or deliveries made on account of such deposit or shares prior to the receipt by the banking organization or foreign banking corporation of notice in writing signed by any one of such joint tenants, not to pay or deliver such deposit or shares and the additions and accruals thereon in accordance with the terms thereof, and after receipt of any such notice, the banking organization or foreign banking corporation may require the receipt or acquittance of both such joint tenants for any further payments or delivery.

*Banking Law § 675*

69.    "Under New York Bank Law 675, the establishment of a joint bank account creates a rebuttable presumption that each named tenant is possessed of the whole of the account so as to make the account vulnerable to the levy of a money judgment by the judgment creditor of one of the joint tenants." *In re Grodetzky,* 495 B.R. 223, 225 (Bankr. E.D.N.Y. 2012). And so, under the circumstances, the Chase Account funds would be liable to collection by Creditor, Pandarinathan, and DOL Co-Creditor in the event that the debts are not discharged, and the funds might be considered Debtor's property and property of the estate under an alter ego theory.

> Even jointly owned assets are vulnerable to levy by a judgment creditor pursuant to CPLR 5225. "Generally, the deposit of funds into a joint account constitutes prima facie evidence of an intent to create a joint tenancy" ( Matter of Richichi, 38 AD3d 558, 559; see Banking Law § 675 [b]; Matter of Dubin, 54 AD3d 947, 949). However, at the same time, "[t]he opening of a joint bank account creates a rebuttable presumption that each named tenant is possessed of the whole of the account so as to make the account vulnerable to levy of a money judgment by the judgment creditor of one of the joint tenants" ( Tayar v Tayar, 208 AD2d 609, 610; see Viggiano v Viggiano, 136 AD2d 630, 631; Denton v Grumbach, 2 AD2d 420, 422; Banking Law § 675 [b]).
>                                          * * *
> The Supreme Court properly directed HSBC to turn over the entirety of the subject joint bank accounts to the petitioner ( see LR Credit 10, LLC v Welsh, 17 Misc 3d 1129[A], 2007 NY Slip Op 52193[U]; Rappaport, Steele Co., P.C. v JPMorgan Chase Bank, N.A., 13 Misc 3d 1203[A], 2006 NY Slip Op 51657[U]; Velocity Invs., LLC/Citibank v Astoria Fed. Sav. Loan, 12 Misc 3d 1184[A], 2006 NY Slip Op 51440[U]; Ford Motor Credit Co. v Astoria Fed., 189 Misc 2d 475, 477).

*In re Signature Bank*, 67 AD3d 917, 889 N.Y.S.2d 242 (2d Dept 2009)

> In this case, the problem arises because there is a presumption in New York State that monies deposited in such a joint account, by either party, is regarded as the joint money of each party. This presumption may be rebutted. See *Brown v. Bowery Savings Bank,* 51 N.Y.2d 411, 434 N.Y.S.2d 916, 415 L.Ed.2d 906 (1980); § 675 N.Y. Banking Law; *Sandler v. United Industrial Bank,* 23 A.D.2d 567, 256 N.Y.S.2d 442 (2d Dept. 1965).

*In re Davis*, 29 BR 652, 654 (Bankr WDNY 1983)

> " '[T]he opening of a joint bank account creates a rebuttable presumption that each named tenant is possessed of the whole of the account so as to make the account vulnerable to levy of a money judgment by the judgment creditor of one of the joint tenants' " (*Matter of Signature Bank v HSBC Bank USA, N.A.*, 67 AD3d 917, 918 [2009], quoting *Tayar v Tayar*, 208 AD2d 609, 610 [1994]; *see* Banking Law § 675 [b]). …. Therefore, the petitioner was not required to establish that the judgment debtor was the sole contributor of funds to the account….

*Matter of JRP Old Riverhead, Ltd. v Hudson City Sav. Bank*, 106 A.D.3d 914, N.Y.S.2d 176 (2d Dept 2013)

> "The court there found the debtor's argument without merit because under state law, funds in a joint bank account are presumptively the property of the owners of the account.… "

*Capital One Equip. Fin. Corp. v Singh (In re Singh)*, 585 BR 330, 338 (Bankr EDNY 2018)

70.     Furthermore, because, as stated by Debtor and reported in the SOFA [DOC 9], ASMG deposits were commingled with Debtor's and Ashna's deposits in the Chase Account, there is a unity of interest pursuant to which the corporate veil can be pierced, and the Chase Account may be treated as Debtor's separate property, which can provide a basis for denial of exemption as well as discharge and supports Creditor's Objection in the Shah Grover Motion to release of the Chase Account funds to Non-Debtor Ashna at this point in the proceedings.

> Although Section 727(a)(2)(B) only applies to "property of the estate," a court may pierce the corporate veil of a business and treat its assets as the debtor's individual property, and, thus, property of the debtor's estate, under an alter ego theory. See, e.g. In re Riley,351 B.R. 662, 671 (Bankr.E.D.Wis. 2006); In re Bon-ham,224 B.R. 114, 116 (Bankr.D.Alaska 1998) (holding that courts have the authority to deny a discharge to an individual debtor under Section 727(a)(2)(A) based upon transfers of property of corporations found to be the debtor's alter ego); see also In re Rodriguez, 2008 WL 3200215, at *7 (recognizing authority that an individual debtor causing his wholly-owned corporation to transfer property can provide a basis for a denial of discharge under Section 727(a)(2)(A),

*In re Pisculli*, 426 BR 52, 60 (EDNY 2010)

> "Since funds were commingled between personal and business accounts with no apparent legitimate business reason, this factor weighs heavily in favor of piercing the corporate veil."

*In re Stamou*, *18 [Bankr EDNY, Jan. 17, 2013, No. 8-09-78895 (REG)]

> a. Commingling of funds; failure to segregate funds; unauthorized diversion of corporate funds; treatment by an individual of corporate asserts as her own; the use of the corporation as a mere conduit for the individual's business; disregard of corporate formalities and failure to maintain arm's-length transactions with the corporation

> These six factors all weigh in favor of a finding that there is a unity of interest and ownership between HPLP and defendant that the separate personalities of HPLP and defendant no longer exist.

*First Horizon Bank v Moriarty*, *19 [EDNY, Dec. 10, 2015, 10-CV-00289 (KAM)(RER)]

> Here, as discussed in the court's analysis of the unity of interest prong of the alter ego test, the court finds that the assets of HPLP and defendant were commingled and that corporate formalities were disregarded. Additionally, the transfer of funds from the HPLP bank account to defendant's personal account during the pendency of this action and after judgment was entered against defendant constitutes a badge of fraud. Here, adherence to the fiction of the separate existence of HPLP would sanction a fraud and work an injustice to the plaintiff in this action, who has obtained judgment against defendant. *See Bank of Montreal*, 476 B.R. at 600 (finding inequitable result when plaintiff's legal interest would have been conveyed to other entities if veil was not pierced). Consequently, the court finds that HPLP is an alter ego of defendant.

*First Horizon Bank v Moriarty*, *25 [EDNY, Dec. 10, 2015, 10-CV-00289 (KAM)(RER)]

71.    An even more fundamental consideration is that Debtor testified at the 341 Meeting that ASMG revenue was deposited into the Chase Account as well as Debtor's and Ashna's individual income (Transcript 39:21-40:4; 40:11-41:4; 41:21-42:8, 44:14--46:5).

72.    Despite the fact that Debtor reports at Schedule A/B at Part 4 that the current value of the Chase Account that Debtor owns, exclusive of secured claims or exemptions, is U.S.$53,337.52, the SOFA recites at Part 9 [DOC 9]:

> Nearly all Deposits in to JP Morgan Chase Joint Bank Account were made to the LLC for work performed by the business. Not property of the Debtor.

Deposits into JP Morgan Joint Bank Account - to the extent that ASMG does not own the deposits, half each belongs to Ashna and Madhu.

73.     At Schedule C Part 2 [DOC 9], Debtor claims exemption for the Chase Account as follows:

U.S.$1,475.00 – pursuant to 11 USC 522(d)(5)
U.S.$13,950.00 pursuant to 11 USC 522(d)(5)
U.S.$37,912.52 pursuant to SOFA Part 9 Q.23, which reports the value as "Unknown," and states, "Nearly all Deposits in to [*sic*] JP Morgan Chase Joint Bank Account were made to the LLC for work performed by the business. Not property of the Debtor."

74.     If the funds are not property of the Debtor, then they cannot be exempted. To the extent that the Debtor claims U.S.$37,912.52, or in the alternative, "nearly all deposits" in the Chase Account are ASMG funds, such funds never belonged to the Debtor, cannot pass to the estate, are not, therefore, property of the estate, and thus are not eligible for exemption.

No property can be exempted (and thereby immunized), however, unless it first falls *within* the bankruptcy estate. Section 522(b) provides that the debtor may exempt certain property "from property of the estate"; obviously, then, an interest that is not possessed by the estate cannot be exempted.

*Owen v Owen*, 500 US 305, 308-09 (1991)

75.     Moreover, the Chase Account funds must not be exempted so that they could be turned over to Ashna at this point because Ashna is an insider, and further discovery is necessary to determine the extent, if any, to which Ashna might have colluded in, aided, or abetted the documented and alleged fraudulent activities of Debtor, which may provide a basis for denial of exemption as well as dischargeability.

(citing Friedman v. Sheila Plotsky Brokers, Inc. (In re Friedman), 126 B.R. 63, 69-70 (B.A.P. 9th Cir. 1991) ("the Code assigns insider status to entities or relatives of the debtor, or of persons in control of a related entity, whose affinity or consanguinity gives rise to a conclusive presumption that the individual or entity commands preferential treatment by the debtor."))

*In re Bruno Machinery Corporation*, *19 (Bankr NDNY, June 9, 2010, Case No.: 05-20412, Adv. No.: 07-90028)

> "Most courts have held that, even where the property is actually disbursed to an entity related to the debtor, a nondischargeability action may be maintained against the debtor where the debtor received a direct or indirect benefit from the funds."

*In re Roberti*, 183 BR 991, 1004 (Bankr D Conn 1995)

76.     The value of the Chase Account has not been established, and there are contradictory evidence and testimony with respect thereto. By correspondence dated December 29, 2022, Chase reported the present balance of the Chase Account as U.S.$57,601.86. In correspondence dated January 5, 2023, in connection with filing of the Petition, Chase reported the amount of the levied funds in the Chase Account as U.S.$61,301.86. *See* **Exhibit F**. Debtor's Schedule A/B at Part 4 [DOC 9], entered January 17, 2023, reports the value of the Chase Account that Debtor owns as U.S.$53,337.52. Debtor testified at the 341 Meeting that the value of the Chase Account was U.S.$53,000 (Transcript 44:19-21; 46:1-5). Exhibit E [DOC 44-5] to Trustee's Objection to the Shah Grover Motion [DOC 44] is a Chase Account statement dated February 28, 2023 through March 24, 2023, also annexed hereto under **Exhibit F**, showing the Beginning Balance and Ending Balance of U.S.$21,606.20.

77.     Trustee's Objection [DOC 44] states in pertinent part:

> 4. As detailed above, there is no current restraint on the Funds. In fact, a party with access to the account other than the Trustee appears to have withdrawn a portion of the Funds post-petition despite the Trustee's explicit instructions to the Debtor that no property may be dissipated, transferred, liquidated, or otherwise disposed of absent his written instruction. Therefore, the Motion is moot.

> 5. Furthermore, given the conflicting information as to ownership of the Funds and the alleged commingling of Funds between the Debtor, Ms. Shah and ASMG, there remain serious questions concerning the Debtor's claimed exemptions and even the recent withdrawal of Debtor's counsel. The Trustee's ongoing investigation has been hampered by these conflicting claims and evidence, and the Trustee has not yet been able to determine what

portion of the Funds, if any, belong to the Debtor and what portion represents estate property under Section 541 of the Bankruptcy Code.

78.     The Chase Account should be considered property of the estate in its entirety to allow the Trustee to conduct adequate discovery to make an informed decision about this asset, which at this point is the most substantial asset of the estate.

> Subsection (2) of 11 U.S.C. § 704 declares that a trustee is accountable for all property received. Subsection (4) of 11 U.S.C. § 704 directs the trustee to investigate the financial affairs of the debtor. Additionally, subsection (9) of 11 U.S.C. § 704 requires the trustee to file a final account of the administration of the estate with the court. As required by these provisions, a trustee has a duty to ascertain if an allowed exemption must be turned over to a federal or state agency which may have a superior nondischargeable tax claim under 11 U.S.C. § 523(a)(1), or turned over to a spouse or former spouse who might have a nondischargeable alimony, maintenance or support claim under 11 U.S.C. § 523(a)(5). The trustee must also ascertain if any exempt assets are subject to unavoidable liens as stated in 11 U.S.C. § 522(c)(2). In the event that the trustee surrenders the exempt assets to the debtor without first determining that no such excepted nondischargeable claim or unavoidable lien exists, the trustee might thereafter be held accountable to claimants holding such superior claims or liens.
>
> Certainly the trustee in bankruptcy is entitled to investigate all aspects of the debtor's financial condition, including the examination of his business books and records and past federal and state tax returns.

*In re Kaufman*, 68 BR 391, 393 (Bankr SDNY 1986)

## THE FULL VALUE OF THE CHASE ACCOUNT AS OF THE PETITION DATE SHOULD BE DEEMED PROPERTY OF THE DEBTOR'S ESTATE.

79.     As demonstrated by the foregoing narrative, Debtor has a history of fraudulent transfer, evasion, misappropriation of funds, and abuse of the system.

80.     The ownership of the Chase Account remains unresolved, and there is considerable uncertainty with respect to the current or Petition Date value of the Chase Account.

81.     There is substantial indication that Debtor and insiders are manipulating the system in connection with the Chase Account with the effect that Creditor, Co-Creditor, and Pandarinathan are prejudiced, and the Trustee is being hindered, delayed, or defrauded in performing his function in the bankruptcy process.

82.     Accordingly, pursuant to the Court's discretion under 11 U.S.C. 105, Creditor seeks entry of an order deeming the full value of the Chase Account as of the Petition Date to be property of the estate in order to curtail any further abuse of the bankruptcy process or dissipation of the estate.

## CLAIMED EXEMPTIONS SHOULD BE DENIED OR RESTRICTED BECAUSE DEBTOR HAS EXHIBITED INTENT TO HINDER, DELAY, OR DEFRAUD CREDITORS AND THE TRUSTEE.

83.     Credibility issues that arose from Debtor's 341 Meeting testimony and significant omissions and inconsistencies in the Schedules and SOFA require further independent investigation and provide a basis for denying or restricting claimed exemptions at this time.

84.     Debtor's SOFA [DOC 9] at Part 2Q.5 answers "No" to the question, "Did you receive any other income during this year or the two previous calendar years?" and fails to report "other income" of U.S.$45,000.00 as deposited into the Chase Account from Creditor's Counsel's IOLTA attorney trust account on or about August 26, 2022 in connection with settlement in another matter. *See* **Exhibit K**. *See also*, Transcript 62:15-64:19.

85.     At Schedule A/B Part 1, Debtor answers "No" to the question, "Do you own or have any legal or equitable interest in any residence, building, land, or similar property?" However, a search of public records reveals the following:

(a)  Upon information and belief, as of Petition Date, since September 6, 2022, Debtor, together with insiders Shah and Ashna, had been involved in a transaction with respect to a contract to purchase shares in Sutton Manor Apartments, Inc. related to

Cooperative Unit 5G located at 440 East 56th Street, New York, NY 10022 ("Unit 4G") listed at U.S.$950,000.00 (the "4G Transaction"). *See* **Exhibit L**.

(b) Debtor was named as First Debtor of Record in a UCC-1 filing in connection with related financing with Citibank dated as of and recorded on January 6, 2023, which was six (6) days after Petition Date. *See* **Exhibit L**.

(c) A UCC-3 Termination dated March 14, 2023 was recorded on March 15, 2023 removing Debtor as Debtor of Record with respect to the Citibank loan. *See* **Exhibit L**.

(d) A UCC-1 in connection with related financing with First Republic naming Shah and Ashna as Debtors of Record dated March 10, 2023 was recorded on March 15, 2023; *See* **Exhibit L**.

(e) A UCC-3 Amendment dated April 14, 2023 was recorded on April 18, 2023 deleting Ashna as Debtor of Record in connection with the First Republic loan. *See* **Exhibit L**.

(f) The 4G Transaction closed on March 20, 2023 for consideration of U.S.$950,000.00 with Debtor and Shah Transferees and Buyers of Record as reported in the RPTT-RETT dated March 20, 2023 and recorded March 23, 2023. *See* **Exhibit L**.

(g) The ownership of the shares in Unit 4G was transferred from Debtor and Shah to Shah for U.S.$0.00 consideration as reported in ACRIS records and related filing dated April 19, 2023 and recorded May 1, 2023 and in the Closing Report. *See* **Exhibit L**.

86.     Debtor lied about her involvement in the Unit 4G Transaction multiple times at the 341 Meeting (Transcript 10:14-14:15; 53:21-55:15).

87.     Although the Unit 4G Transaction involved a post-Petition acquisition and transfer of an asset, Creditor respectfully submits that, as Unit 4G was clearly under contract pre-Petition, and Debtor knowingly and fraudulently concealed the Unit 4G Transaction with the "intent to hinder, delay, or defraud a creditor or officer of the estate charged with custody of property" (11 U.S.C. 727), the transfer of ownership represents a fraudulent conveyance according to the intent of 11 U.S.C. 548.

88.     The Unit 4G Transaction, even without the benefit of the full results of ongoing discovery, demonstrates a scheme to defraud creditors in collusion with insider Shah and also involving insider Ashna. Debtor's concealment and false statements about the Unit 4G Transaction invoke liability under 18 U.S.C. 152 Concealment of Assets; False Oaths in that Debtor knowingly and fraudulently concealed interest in a substantial asset in the filed Schedules and made a false oath regarding the asset at the 341 Meeting in relation to this Title 11 case.

89.     Debtor appears to have assigned occupancy of the storage units (the "Storage Units") with Maya Properties LLC d/b/a Moishe's Self Storage ("Moishe") and ownership of the goods therein to Ashna on December 30, 2022, the day before the Petition Date. However, the Moishe documentation with respect to the Storage Units is confusing and contradictory and as such requires further investigation in order to determine whether or to what extent there might have been a fraudulent transfer. *See* **Exhibit M**.

90.     According to the SOFA [DOC 9] at Part 3 Q.7, Debtor made payments to insider Ashna in the aggregate amount of U.S.$4,000.00 on each of December 29, 2022 and December 30, 2022, immediately prior to the Petition Date.

91.     According to Schedule A/B at Part 4 and the SOFA at Part 7Q.18 [DOC 9], Debtor is fifty percent (50%) owner of ASMG together with Ashna, pursuant to a transfer of fifty percent (50%) ownership interest to insider Ashna on or about January 1, 2022, within a year before the Petition Date. However, Debtor's 341 Meeting testimony indicates a different initial ownership configuration and date of transfer (Transcript 23:8-18; 24:17-25:2).

92.     In the SOFA at Part 1Q.2 [DOC 9], Debtor reports her residence period at 455 E. 51st Street, Apt 4F, New York, NY 10022 as 01/2016-04/2022. However, pursuant to subsequent 2004 current and anticipated production and testimony, Debtor resided at that address until on or about August 26, 2022.

93.     The issues raised by Debtor's filings, pre- and post- Petition activities, the Unit 4G Transaction, and proceedings to date generate "suspicions that the process was being used for purposes other than a good-faith effort to secure a fresh start." *In re Greene*, 103 BR 83, 88 (SDNY 1989).

94.     The evidence to date, even without the benefit of full 2004 discovery results, indicates that Debtor is not an "honest but unfortunate debtor," but rather an abuser of the process, and as such, not entitled to exemption or discharge. *See In re Greene*, 103 BR 83 (SDNY 1989); *In re Murray*, 249 BR 223 (EDNY 2000).

**DEBTOR'S REMAINING SCHEDULED OBJECTIONS SHOULD BE FIXED AND LISTING OF ADDITIONAL EXEMPTIONS ENJOINED TO PREVENT FURTHER ABUSE OF THE BANKRUPTCY PROCESS.**

95.     Debtor has repeatedly and intentionally lied in the Schedules and in the 341 Meeting testimony and furthermore has a well documented history of perjury in the Pre-Petition Proceedings. *See* **Exhibit G**.

> Murray was found to have intentionally lied, both in his schedules and at the trial in the adversary proceeding. This conduct cannot be excused, no matter whether debtor was a business-owning or

> professionally-employed perjurer or simply a working class
> perjurer.
>
> * * *
>
> Nevertheless, the bankruptcy judge's finding that debtor repeatedly,
> intentionally lied at trial is relevant to the issues tried because, as
> discussed above, it was highly probative of debtor's fraudulent intent
> in filing false schedules.

*In re Murray*, 249 BR 223, 232-33 (EDNY 2000)

96.     In order to prevent further abuse of process and by virtue of the broad exercise of

power in the administration of a bankruptcy case provided to the Court by 11 U.S.C. 105, in

addition to objecting to the Chase Account exemption in its entirety, Creditor seeks entry of an

order fixing the remaining claimed exemptions and enjoining Debtor from amending Schedule C

to include any additional exemptions without leave of the Court. *See In re Greene*, 103 BR 83,

87-88 (SDNY 1989).

## NOTICE AND PROCEDURE

97.     Complete copies of Notice and this Motion are being served upon the Debtor,

counsel of record to the Debtor, all parties requesting notice, the Chapter 7 Trustee, and the

United States Trustee. Creditor respectfully submits that such Notice complies with Rule 2002 of

the Federal Rules of Bankruptcy Procedure and is otherwise reasonable and appropriate, and that

no other or further notice is required or necessary.

98.     This Motion includes citations to the applicable rules and statutory authorities upon

which the relief requested is predicated. Accordingly, Creditor respectfully submits that this

Motion satisfies the requirements of Local Bankruptcy Rule 9013-1(a).

## CONCLUSION

99.     For the reasons recited herein, Creditor objects to the exemption of the

Chase Account and seeks an order denying that exemption in its entirety and granting related relief

requested in light of Debtor's persistent pattern of evasion, prevarication, concealment, and serial transfer of assets.

100.    Creditor respectfully reserves all rights to further timely object to additional scheduled exemptions, if any, and the right to assist Trustee in seeking the recovery of the value of any dissipated asset to the extent that such asset is determined to constitute property of the Debtor's estate.

101.    Except as otherwise detailed herein, no other application for relief sought has been made to this or any other Court.

**WHEREFORE**, the Creditor respectfully requests that this Court grant this Motion in its entirety and enter an Order substantially in the form of the Proposed Order annexed hereto as **Exhibit A**: (i) denying Debtor's scheduled exemption of the Chase Account in its entirety; (ii) deeming the full value of the Chase Account as of the Petition Date to be the property of the Debtor's estate; (iii) fixing the value of the Debtor's remaining scheduled exemptions, (iv) enjoining Debtor from claiming additional exemptions beyond the scheduled exemptions listed as of February 3, 2023 without leave of the Court; and (v) granting such other and further relief as the Court deems just, equitable, and proper under the circumstances.

Dated: New York, New York          **BRADSHAW LAW GROUP P.C.**
       May 22, 2023

                        By: /s/ Diane Bradshaw
                             Diane Bradshaw, Esq.
                             307 East 89th Street; Suite 4C
                             New York, NY 10128
                             212-327-1524
                             332-777-2408 Fax
                             dbradshaw@bradshawlawgrouppc.com
                             *Counsel to Creditor James Busche*